IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TRAYSON L. WOODEN, #1653938 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv290 |
| BATHRAM C. ONUORAH, ET AL. | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Trayson L. Wooden, a prisoner confined at the Coffield Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights while incarcerated. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

The Court recommends that Defendants' motion for partial summary judgment, (Dkt. #42), be granted—and that Plaintiff Wooden's claims concerning an alleged violation to his right to access the court and alleged retaliation are dismissed with prejudice. Conversely, as Defendants concede, the Court recommends that Plaintiff's claim of excessive force against Defendant Onuorah and claim for the failure to protect/intervene against Defendant Ipoola proceed before the Court. The Court will not address the excessive force and failure to protect/intervene claims in this Report.

**I. Wooden's Amended Complaint**

The operative complaint in this proceeding is Wooden's original complaint, (Dkt. #1). He sues Defendants Officer Onuorah for an alleged violation of excessive force and Defendant Ipoola for the alleged failure to intervene/protect him.

Wooden maintains that on August 11, 2021, at his cell, he was participating in a peaceful protest by "taking control of his cell door food slot," and by also "holding onto his jumper preventing both Defendant's passage of hid cell on 2-row" because he requested to speak with a supervisor about a legal mail issue, (Dkt. #1, pg. 4). He contends that Defendant Onuorah "used his food slot bar and [his] cell door food slot to repeatedly strike his fingers, hand, wrists, forearms, and then threated to spray" him in the face with a chemical agent. Defendant Onuorah then "ordered" Defendant Ipoola to "spray" Wooden, who declined. Defendant Ipoola, according to Wooden, "observed Defendant Onuorah illegal unauthorized acts failing to intervene and/or protect [him] from Defendant Onuorah."

Wooden further elaborates in his memorandum by explaining that in the early morning of August 11, 2021, he was housed in G-Wing Cell 215 at the Coffield Unit. Defendant Onuorah was assigned to work on P-2 G-Wing and "passed" his cell to pass out breakfast with Defendant Ipoola accompanying him. Wooden explains that he opened his food slot, "then implemented, wrapping his state issued jumper 'prison clothing' around the 2 row rail, while holding onto the other end with both hands through his food slot preventing both officers passage by his cell to peacefully protest" by requesting to speak to a supervisor, (Dkt. #1, pg. 14).

As he approached Wooden's cell, Defendant Ipoola "asked what was the problem," and Wooden explained that he requested to speak with a supervisor "15 times which was ignored by Defendant Onuorah." Once Defendant Onuorah walked in front of Wooden's cell, he continues, Onuorah "positioned hisself [sic] to physically use a[n] unnecessary force – nonprovoked to force his body under [Wooden's] jumper[,] ignoring his duty to not use force and request a supervisor when a[n] offender has taken control of his cell door food slot." (Dkt. #1, pg. 15).

Wooden further notes that Defendant Onuorah "then quickly dropped to a low squat" using his hands to push Wooden's jumper up"—"trying for force his way under the jumper, in which a struggle between the two took place." *Id*. at pg. 15. Wooden insists that Defendant Ipoola "just silently observed" by failing to intervene.

Wooden also explains that once Defendant Onuorah "made it under the Plaintiff Wooden's jumper," he "grabbed ahold to Onuorah's left shoulder strap of his vest with his [] left hand," (Dkt. #15, pg. 15). He notes that his left hand was on Onuorah's shoulder strap while he "maintained a right hand grip on his jumper before Onuorah got the opportunity to spin around whipping out his food slot bar to use as a weapon on [him] while his body blocked on the wing 2-row G-wing." *Id*.

He further maintains that both Defendants tried to pry, pinch, squeeze, and pull his left hand "free of Onuorah's vest to no avail" causing Defendant Ipoola to give up—and continue observing the struggle. *Id*. at pg. 16. When Onuorah "final got free," Wooden continues, Wooden's left hand returned to griping his jumper with two hands while "Onuorah immediately pull[ed] his solid steel food slot bar turning around then forcefully striking Wooden's left fingers, hand, wrist, and forearm approximately 20 times." Wooden states that he never released the jumper while Defendant Ipoola "made no verbal or physical attempt to intervene." *Id*.

Wooden contends that Defendant Onuorah then began slamming the cell door against his arms, "as if he was trying to [sever] Wooden's forearms by [using] all of his might," while Defendant Ipoola "made no verbal or physical attempt to intervene." He claims that he was still holding onto his jumper—so Defendant Onuorah pulled out his chemical agent in an attempt to spray Wooden, but Wooden replied that he had asthma and hypertension. At this point, Defendant Onuorah ordered Defendant Ipoola to spray Wooden while passing him the chemical agent, but Ipoola would not comply, and a supervisor was ordered.

3

Defendant Onuorah left and returned with "the P-2 Restrictive Housing Unit" supervisor, and Wooden remarked that Onuorah assaulted him by beating him with his food slot bar and his door handle because he "need[ed] to speak with a supervisor because Onuorah continues to work on G-Wing an[d] refuse[d] to pick up my legal mail and law library legal material request form," (Dkt. #1, pg. 17). Wooden explains that he released the jumper once Lieutenant Cothran arrived.

Prison officials charged Wooden with a disciplinary infraction, to which he asked how he could receive a disciplinary case "if he did not assault" Onuorah. Sergeant Rogers explained to Wooden that he would review the camera—and picked up Wooden's legal mail and legal request form.

Wooden states that the use-of-force video depicts his left forearm with bruises, swelling, blood clots, cuts at various degrees "which appeared disfigured," fractures, and that he experienced "excruciating pain." *Id*. at pg. 19. He also maintains that his left hand was unable to function. A prison official visited Wooden "cell-side" and explained to security twice that he needed to be referred to medical for further evaluation, as he could not make a closed fist with his left hand. *Id*. Sergeant Rogers subsequently returned to Wooden's cell to take photographs of the injuries from various angles. Wooden claims that the Office of the Inspector General (OIG) refused to speak with him.

At 4:10 pm, Wooden notes, he was escorted to the prison's medical department where he received treatment for his injuries. Medical officials applied soap, alcohol pads, triple antibiotic ointment, a left arm cast with ace bandages, an ice pack, and pain medication to keep on his person. Wooden was ultimately transferred to the Telford Unit.

**II. Defendants' Motion for Partial Summary Judgment**

In their motion for summary judgment, (Dkt. #42), Defendants contain that Wooden has failed to carry his burden in overcoming qualified immunity with respect to his access-to-courts and retaliation claims. Alternatively, Defendants maintain that Wooden failed to exhaust his required administrative remedies on these claims. Defendants contend that the only claims that should proceed are his claims against Defendant Onuorah for excessive force and Defendant Ipoola for the failure to protect.

**III. Wooden's Response**

Wooden filed a response, (Dkt. #43), to Defendants' motion, stating that he is "not in opposition of their motion for partial summary judgment regarding his access to court claim, retaliation, qualified immunity and sovereign immunity defenses of those claims." He also explains that he "agrees" that the claims of excessive force and failure to protect should proceed.

**IV. Legal Standards**

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). "Material facts are those that might affect the outcome of the suit under the governing law." *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2019) (internal citation and quotations omitted).

The Fifth Circuit has held that summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). It is not the function of the trial judge—in ruling on a motion for summary judgment—to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence. *Id*. at 567 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988).

To carry this burden, the non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only "a scintilla of evidence."" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" will not survive summary judgment. *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir.

2016). Rather, the non-movant "must point to specific evidence in the record demonstrating a material fact issue" at the summary judgment stage. *See Mitchell v. Mills*, 895 F.3d 365, 270 (5th Cir. 2018). The non-movant cannot rest upon mere allegations or "denials of the adverse party's pleading." *See U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

When qualified immunity is invoked, as is here, "only evidence—not argument, not facts in the complaint—will satisfy" the burden of proof necessary to defeat summary judgment. *See Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) (internal citation omitted). Once the movant asserts immunity, the burden then shifts to the plaintiff to rebut it with more than conclusory allegations, unsubstantiated assertions, or speculation. *See Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *see also Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011) ("Miller has not overcome Graham's assertion of qualified immunity because he presented nothing but conclusory allegations and unsubstantiated assertions to assert his claim").

**V. Discussion and Analysis**

Defendants' motion for partial summary judgment is well-taken. A review of the summary judgment evidence, viewed in the light most favorable to Wooden, demonstrates that the evidence before the Court could not lead to different factual findings and conclusions regarding his retaliation and access-to-courts claims against Defendants. Summary judgment in favor of Defendants on those claims is warranted—and the claims should be dismissed with prejudice. However, Wooden's claims of alleged excessive force against Defendant Onuorah and failure to protect against Defendant Ipoola should proceed before the Court.

As an initial matter, to the extent that Wooden sues Defendants for monetary damages in their official capacities, the Court notes that the Eleventh Amendment bars recovering section 1983 money damages from individuals in their official capacities. *See Oliver v. Scott*, 276 F.3d 736,

742 (5th Cir. 2002) (explaining that the Fifth Circuit has "twice held the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacities."); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (finding that the Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability). Plaintiff's claims for money damages against Defendants in their official capacities are without merit and should be dismissed.

    1. Access to Courts

The Court understands that Wooden maintains that his right to access the courts was violated because his injuries stemming from the force incident prevented a "proper and timely" proposed successive federal habeas corpus petition in the Northern District of Texas, (Dkt. #1, pg. 11). He contends that he was prevented from "fully and fairly presenting a 45-page certificate of appealability"—as he seeks compensation due to "wrongful imprisonment," had his successive federal petition been heard.

Prisoners have the constitutional right to access legal materials, and prison officials may not deny prisoners access to courts. *See Clewis v. Hirsch*, 700 F. App'x 347, 348 (5th Cir. 2017) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The Supreme Court has stated that the right encompasses no more than the ability of an inmate to prepare and transmit a *necessary* legal document to the court. *Id.* (citing *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (internal quotations and footnote omitted)); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (explaining that the right "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.").

However, prisoners must demonstrate an actual injury to demonstrate a violation of this right. *Lewis*, 518 U.S. at 351; *see also Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (explaining that the Supreme Court, in *Lewis*, "held that an inmate alleging denial of access to

8

courts must demonstrate an actual injury stemming from defendants' unconstitutional conduct."). Similarly, a plaintiff claiming a denial of access to courts through mail tampering must show that his legal position has been prejudiced by the alleged mail tampering. *See Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993).

When examining whether a plaintiff has experienced "actual injury," the Supreme Court has provided examples of circumstances that might show a denial of access to court:

> [The prisoner] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered some arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis*, 518 U.S. at 351; *see also McIntosh v. Thompson*, 463 F. App'x 259, 260-61 (5th Cir. 2012) (unpublished) ("Even if McIntosh's constitutional rights had been restricted, he failed to allege sufficiently that he suffered an injury in fact, which is required to state a claim for denial of meaningful access to courts.").

Importantly, the question is whether the plaintiff's "position as a litigant was prejudiced" as a direct result of the alleged denial. *See, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (reasoning that "if Eason was pursuing a legal action which necessitated his use of the law library and access to the library was denied, this deprivation could represent a violation of his constitutional rights."); *Torres v. Bullock*, 2021 WL 2451326, at *4 (S.D. Tex. Apr. 6, 2021) ("In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable or nonfrivolous claim or was prevented from presenting such a claim because of the alleged denial.").

The Fifth Circuit explained that "[d]enial of access claims take one of two forms: forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in

9

preparing and filing suits at the present time,' and backward-looking claims alleging that an official has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.'" *See Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 417-18 (2002)).

Here, the essence of Wooden's claim is that Defendant Onuorah prevented or hindered his ability to prosecute his successive habeas petition in case number 4:21cv936 with the Northern District of Texas. District Judge Mark Pitman transferred, (Exhibit A), the successive petition to the United States Court of Appeal for the Fifth Circuit—and the Fifth Circuit ultimately denied Wooden's motion for an order authorizing a successive habeas petition for Wooden's failure to meet his burden, (Dkt. #42-5) (Exhibit E). Given that Wooden was able to file his motion for a successive petition, he has not shown that Defendant Onuorah prevented his ability to do so or that he suffered an actual injury. *See, e.g.*, *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) ("Chriceol has not demonstrated that withholding access to his prison account caused actual injury in this case. Furthermore, a review of the record does not show any evidence of actual injury. Chriceol's fee was paid, and the complaint was successfully filed.").

Furthermore, because the Fifth Circuit denied his motion to file a successive habeas petition, Wooden has not pleaded—much less shown—that he was prevented or hindered from filing a nonfrivolous claim. *See Jones*, 188 F.3d at 325. This claim should therefore be dismissed.

2. Retaliation

Next, Wooden argues that Defendant Onuorah retaliated against him by threatening to use chemical spray on him during the force incident since he sought to speak with a supervisor. He also claims that Onuorah retaliated against him because Onuorah concocted a conspiracy to give

10

or expose him to Shingles or chickenpox and for prison medical officials to manipulate his medical records, (Dkt. #1, pg. 32.

Federal Courts view prisoners' retaliation claims "with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1164-66 (5th Cir. 1995). To prevail on a section 1983 claim for First Amendment retaliation, Wooden must show that "(1) [he] was engaged in a constitutionally protected activity[;] (2) the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[;] and (3) the defendant's adverse actions were substantially motivated [by] the constitutionally protected conduct." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (citing *Keenan*, 290 F.3d at 259). The second element requires some showing that "the plaintiff's exercise of free speech has been curtailed." *Keenan*, 290 F.3d at 259.

The Fifth Circuit most recently found that in order for a prisoner to succeed on a retaliation claim, the prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *See Streater v. Davis*, 2022 WL 10362714, at *1 (5th Cir. Oct. 18, 2022) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). To show causation, "an inmate must allege the violation of a constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident … would not have occurred." *Ancar v. Robertson*, 2022 WL 1792535, at *3 (5th Cir. June 2, 2022) (quoting *Woods*, 60 F.3d at 1166). In *Streater*, the Court determined that Streater failed to allege causation because, in part, "he failed to allege facts to allow the inference that he was transferred because of his lawsuit." *Id*.

11

Wooden's claim for First Amendment retaliation fails. The Court understands that Wooden claims that he was retaliated against through being threatened to be sprayed with a chemical agent during the force incident because he asked to speak to a supervisor. Wooden, however, has not shown a chronological series of events that would allow retaliation to be plausibly inferred—as he has not shown that Defendant Onuorah's actions were motivated by retaliation rather than Wooden's own actions. A prisoner cannot openly refuse to obey orders and jeopardize internal order and security and then contend that the consequences of their own recalcitrance was motivated by retaliation. *See, e.g.*, *Minix v. Blevins*, 2007 WL 1217883, at *26 (E.D. Tex. Apr. 23, 2007) ("Similarly, Minix cannot refuse to comply with orders and then contend that the consequences of his refusal were motivated by the retaliation, rather than the refusal itself.").

Here, Wooden readily admits that he flouted prison rules and did not obey orders, (Dkt. #1, pg. 15). He admits that he took control of his cell door food slot and held onto his jumper, preventing Defendant Onuorah's passage of his cell. Wooden further admits that he held onto Defendant Onuorah's shoulder vest. In these ways, Wooden has not shown that—absent his own recalcitrant actions—he would not have been threatened with a chemical agent. *See e.g.*, *Orebaugh v. Caspari*, 910 F.3d at 528 (nothing that "while a prisoner can state a claim of retaliation by alleging that a disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted <u>for acts that a prisoner was not entitled to perform</u>.") (emphasis added).

Further fatal to Wooden's claim of retaliation through the "threat" of being sprayed with a chemical agent, the mere "threat" of being pepper sprayed presents no constitutional concern. Further, Wooden's articulation of events demonstrates that he was never actually sprayed; rather, his own facts demonstrate that Defendant Ipoola refused to spray him, and a supervisor was called,

12

(Dkt. #1, pg. 17). Wooden has not shown genuine issue of material fact with respect to his retaliation claims.

With respect to Wooden's claim of a conspiracy to give him Shingles through retaliation, such claim similarly fails. First, Wooden provides nothing other than his own speculation and conclusory allegations that he suffered from Shingles or that someone infected him with Shingles. Speculation and conclusory allegations do not overcome a properly support summary judgment motion. *See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016).

Second, with respect to a civil conspiracy, Wooden must prove an actual deprivation of a constitutional right. *See Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). "The elements of civil conspiracy are the following: (1) an actual violation of a right protected under section 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). Importantly, mere conclusory allegations of a conspiracy—absent reference to material facts—do not state a cause of action under section 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (*en banc*).

Here, Wooden provides nothing but his own personal belief that Defendant Onuroah engaged in a conspiracy to give him Shingles or chickenpox, manipulate his medical records with medical officials, and then transfer him to a different TDCJ unit, (Dkt. #1, pg. 26). Conclusory allegations do not state a constitutional violation under section 1983—and not overcome Defendant's motion for summary judgment. *See R.A.M. Al-Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995).

Moreover, Wooden fails to state a claim for civil conspiracy, as "TDCJ and its employees constitute a 'single legal entity which is incapable of conspiring with itself.'" *Thornton v.*

13

*Merchant*, 526 F. App'x 385, 388 (5th Cir. 2013) (unpublished) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998)). Accordingly, any claim by Wooden for a civil conspiracy against Defendant Onuorah—which necessarily involves other TDCJ employees—should be dismissed. All of Wooden's claims for retaliation should be dismissed with prejudice.

    3. <u>Exhaustion of Administrative Remedies</u>

Wooden's retaliation and access-to-courts claim suffer from an even more fundamental flaw: Even if he identified or demonstrated a constitutional violation, which he has not, as to both claims, he failed to exhaust his required administrative remedies before filing this federal lawsuit. The properly supported summary judgment evidence reflects—and Wooden does not dispute—that during the relevant time period, Wooden did not file a Step 2 appeal for any of his grievances except for one, grievance number 20211532688, and raised issues for the first time in that single, Step 2 appeal.

It is well-settled that prisoners must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion

14

requirement in light of its purpose, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Court subsequently held that exhaustion is mandatory, and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90-91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). It was noted that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. In light of *Jones v. Bock*, the Fifth Circuit provided guidance concerning how the exhaustion question should be handled in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). The following procedures were outlined:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Id.* at 272-73.  A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only.  *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

TDCJ provides a two-step procedure for processing prisoner grievances.  *See Johnson*, 385 F.3d at 515-16. A TDCJ prisoner must properly complete both the Step One grievance and the Step 2 appeal grievance in order to properly and fully exhaust his required administrative remedies. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement and mere substantial compliance is insufficient. *Dillon*, 596 F.3d at 268. A Texas prisoner may raise only one issue in a single grievance. *See Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008) (explaining that TDCJ requires "only one issue per grievance be presented and that each issue have been filed at [the] Step One" stage) (unpublished).

Here, the summary judgment evidence reflects that Wooden filed one grievance related to his retaliation and access-to-courts claims—grievance number 20211532688—but only raised his retaliation claims and access-to-courts claims in the Step 2 grievance appeal, (Dkt. #42, Exhibit G, pg. 9-10; 23-24). In the Step 1 grievance, Wooden complained about the alleged force incident—and only subsequently raised complaints regarding retaliation, the alleged conspiracy with respect to his medical records, and his access claim regarding his successive habeas petition in the Step 2 appeal, (Exhibit G, pg. 23-24). But a prisoner cannot raise a new issue at the Step 2 level of a grievance; the failure to raise the complaint at both the Step 1 and Step 2 levels render the complaints unexhausted. *See Johnson*, 385 F.3d at 315 ("This court has previously held that a prisoner must pursue a grievance through both steps for it to be considered exhausted."); *see also Randle*, 299 F. App'x at 467 ("It is clear that Randle did not raise his claim against Woods until

16

step two of the process, thus failing to meet the exhaustion requirement."). Because Wooden failed to raise his retaliation/conspiracy and access-to-courts complaints in both his Step 1 and Step 2 grievances, he failed to exhaust those claims and they must be dismissed.

    4. Qualified Immunity

Defendants invoke the defense of qualified immunity with respect to Wooden's retaliation/conspiracy and access-to-courts contentions. Wooden has the burden to demonstrate that the defense of qualified immunity does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020); *Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2022). Conclusory allegations are insufficient to overcome the defense. *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643-44 (5th Cir. 2014); *see also Edmiston v. Borrego*, 75 F.4th 551, 561 (5th Cir. 2023) (rejecting Plaintiffs' conclusory statement).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Wooden has not met his burden: He has not identified a constitutional violation concerning his retaliation/conspiracy and access-to-courts claims. Further, Wooden does not contest the dismissal of those claims—and he similarly explicitly states that he does not disagree with Defendants' entitlement to qualified immunity on those claims. In doing so, he has neither

17

overcome Defendants' properly supported motion for summary judgment on these claims nor met his burden to overcome Defendants' entitlement to qualified immunity.

RECOMMENDATION

Accordingly, it is recommended that Defendants' partial motion for summary judgment, (Dkt. #42), be granted—and that Wooden's claims of retaliation, conspiracy, and access-to-courts be dismissed with prejudice. Wooden's excessive force claims against Defendant Onuorah and his claim regarding the failure to protect against Defendant Ipoola should proceed before the Court.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 12th day of August, 2024.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE